# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 22-637V

| | |
|---|---|
| TERRI JONES-WHITE,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: August 18, 2025 |

*Jonathan Joseph Svitak*, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*Alec Saxe*, U.S. Department of Justice, Washington, DC, for Respondent.

### **FACT RULING ON ONSET**[1]

On June 9, 2022, Terri Jones-White filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging the Table claim of shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine she received on January 15, 2021.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner also received a Shingrix (shingles) vaccination in the left arm on January 15, 2021. Ex. 2 at 1. The Shingrix vaccination is not covered by the Program. 42 C.F.R. § 100.3.

### I. Relevant Procedural History

Following Respondent's medical review, the parties attempted to informally resolve this case but were ultimately unsuccessful. ECF Nos. 28-35. Respondent filed his Rule 4(c) Report in defense of this claim in November 2024, arguing (in relevant part) that Petitioner had not established Table-consistent onset. Respondent's Report at 8, ECF No. 36. Specifically, although she attests to immediate post vaccination shoulder pain in her affidavit, Petitioner waited almost five months before seeking treatment and then when she did seek care, she failed to identify a precise time of onset. *Id.* at 8-10 (internal citations omitted). Respondent further contends that Petitioner's ability to seek regular care *pre vaccination* (and during the COVID-19 Pandemic) is thus inconsistent with her claims that she delayed shoulder care due to her concerns regarding COVID-19. *Id.* at 9-10. The onset dispute is now ripe for consideration.

### II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of*

2

*Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Relevant Factual Evidence

I make this finding after a complete review of the record, including all medical records, affidavits/declarations, and additional evidence filed:[4]

- Petitioner received a Tdap vaccine on January 15, 2021, at her local pharmacy. Ex. 2 at 1.

- In her signed declaration, Petitioner recalls that "immediately following [her] Tdap injection, there was a burning sensation in [her] left shoulder[.]" Ex. 1 ¶ 9. She continued, "[b]y the next day," her pain in the "left arm and shoulder had not improved, and was now also tender to the touch, and stiff, to the point that [she] had to baby [her] arm and shoulder." *Id*. She "kept thinking the pain would go away, but it did not." *Id.* Her pain progressed over the "next few weeks" to the point that she could not sleep on her left side or participate in daily activities. *Id*. ¶ 10. Petitioner recalls that "[d]uring the

---

[4] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

3

following months," she continued to suffer "constant pain and also began to lose range of motion [("ROM")] in [her] left shoulder and arm." *Id.* ¶ 11.

- Petitioner attests that she did not seek treatment during this time due to COVID, and that her husband, who had a recent heart attack, was especially high-risk. Ex. 1 ¶ 10. She thus waited until after her family was fully vaccination (in May 2021) to seek care. *Id.* ¶ 12. While she waited, she attempted to manage her pain using a heating pad, over-the-counter pain medications, and stretching. *Id.* ¶ 10.

- Approximately five months post-vaccination (on June 10, 2021), Petitioner saw a physical medicine and rehabilitative specialist reporting "pain in the left shoulder which started after she had multiple vaccinations in January 2021." Ex. 4 at 13. Petitioner also reported "some burning at the elbow but no numbness tingling down arm pain [sic] radiating down the arm." *Id.* An examination showed positive impingement signs. *Id.* at 14. The treater opined that Petitioner's injuries were consistent with a rotator cuff arthropathy/impingement, and she recommended physical therapy ("PT"). *Id.*

- Later that month, on June 21, 2021, Petitioner had her initial PT evaluation. Ex. 5.1 at 21. The treater noted that Petitioner's left shoulder pain began in "January 2021." *Id.*

- On February 10, 2022, Petitioner sought care with an orthopedist. Ex. 6 at 17. Under the history of present illness section, the orthopedist wrote that Petitioner "present[ed] with left shoulder pain that started after she received two vaccines in her left arm on 01/2021." *Id.* The treater assessed Petitioner with a partial thickness rotator cuff tear. *Id.* at 19.

- At an April 19, 2022 orthopedic follow-up visit, the orthopedist noted that Petitioner had left shoulder pain in the setting of a "vaccine injury" with onset "approximately [one] year[] ago." Ex. 6 at 14.

- When Petitioner returned for a second round of PT on April 22, 2022, she filled out an initial evaluation form and wrote the onset of her left shoulder pain was on "1/16/2021," one day post vaccination. Ex. 5.2 at 15.

- Additionally, Petitioner's husband submitted a signed declaration, and in it he attests that "[i]mmediately upon vaccination" he observed Petitioner in pain "from the shots in her left shoulder." Ex. 10 ¶ 6. He continued, "[o]n

4

January 16, 2021, Petitioner complained that her left shoulder was burning, stiff[,] and unusually sore from her vaccinations." *Id.* ¶ 7. Petitioner's husband explained that "[d]uring the period from January 15, 2021, . . . to [] June . . . he was able to observe firsthand the pain and suffering [Petitioner] was experiencing from her shoulder injury." *Id.* ¶ 8. He witnessed her limitations in daily activities and unsuccessful treatment with home-remedies. *Id.*

- Petitioner's two daughters each submitted signed declarations on their mother's behalf. Exs. 11-12. One of Petitioner's daughters wrote that "[o]n January 16, 2021, the day after [Petitioner] received her vaccinations, [she] heard [Petitioner] complaining that her arm was hurting and saw that she was having a tough time moving it." Ex. 11 ¶ 5. Petitioner's other daughter wrote that "[o]n January 15, 2021, after [Petitioner] received her vaccinations . . . she complained of pain in her left shoulder that night, and in all the days after her vaccination." Ex. 12 ¶ 5. Both daughters corroborated Petitioner's explanation for delaying medical treatment despite increasing limitations in daily household activities. Ex. 11 ¶ 7; Ex. 12 ¶ 7.

- No other medical record or affidavit/declaration evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV. Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B) and 3(c)(10)(ii) (QAI criteria)).

As stated above, Respondent contends (in part) that Petitioner's medical records do not support the conclusion that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 8-10. But the totality of the evidence is favorable to Petitioner on this issue. The aforementioned medical records, coupled with Petitioner's filed witness declarations, establish that Petitioner reported to treaters an onset close-in-time to vaccination, and that she was experiencing symptoms in the relevant timeframe. *See,* e.g., Ex. 4 at 13; Ex. 5.1 at 21; Ex. 5.2 at 15; Ex. 6 at 17; *see also* Ex. 1.

Admittedly, the record establishes that Petitioner delayed seeking treatment for her left shoulder pain for nearly five months (until June 10, 2021). But this fact does not by itself preclude a finding of Table onset. There is no requirement that a Program claimant prove onset with evidence that was generated *within* the six-month severity

timeframe, let alone contemporaneous to the two-day onset period. And similarly-lengthy delays have in many other cases not proven an obstacle to a favorable onset finding. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). But the delay here is not quite so long.

In addition, and as I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that she "kept thinking the pain would go away" and thus tried unsuccessfully to treat her pain with home remedies while awaiting seeking care. *See,* e.g., Ex. 1 ¶¶ 9-10.

Most importantly, the filed medical record establishes that Petitioner consistently and repeatedly linked her shoulder pain to the subject vaccine – beginning with the June 10th visit, at which time she reported "pain in the left shoulder which started after she had multiple vaccinations in January 2021." Ex. 4 at 13. At least one other subsequent medical record describes onset with more particularity, noting on a PT intake form PT on April 22, 2022, that her left shoulder pain began on "1/16/2021," one day post vaccination. Ex. 5.2 at 15. More so, such entries corroborate the ample and consistent contentions made in Petitioner's and her witnesses' declarations that her pain began within 48 hours of vaccination. *See* Exs. 1, 10-12.

Although some of Petitioner's records suggest an onset beginning at some unspecified time in January 2021, I do not find this evidence tips against a favorable onset determination. *See,* e.g., Ex. 5.1 at 21 (a June 21, 2021 PT record noting left shoulder pain began in "January 2021."); Ex. 6 at 17 (a February 10, 2022 orthopedic note of "left shoulder pain that started after she received two vaccines in her left arm on 01/2021."). In fact, Petitioner still reported her pain as beginning in January 2021 after her receipt of the vaccine in question. These records are thus fairly consistent with her other reports of pain beginning after her subject vaccination discussed above and provide further support for 48-hour onset. Petitioner has thus established that onset of her injury occurred within the timeframe required by the Table.

6

Of course – a lengthy delay in seeking treatment, as here, is *strong evidence* that the claimant's pain was not notably severe. I can (and do) conclude from such a record that Petitioner lived with the pain somewhat easily, and for an extended period of time. This fact *will* impact any pain and suffering award issued in this case – and Petitioner must therefore act accordingly in calculating damages to be requested.

### Conclusion and Scheduling Order

Despite my favorable onset determination, Respondent's remaining objection to a Table SIRVA[5] (not discussed in this Ruling) *could* ultimately require more evaluation. I thus *strongly* encourage the parties to promptly re-attempt an informal resolution of this claim before expending any further litigative resources on the case – but keeping in mind that this issue remains. If at any time informal resolution appears unlikely, given that the claim has been pending in SPU for well over one year (having been assigned in September 2022), the parties should propose a method for moving forward, i.e., with a proposed briefing schedule regarding the remaining disputed issue or otherwise stating how they wish to proceed.

Accordingly, **by no later than Wednesday, September 17, 2025**, the parties shall file a joint status report confirming the date on which Petitioner conveyed, or intends to convey, a reasonable settlement demand and supporting documentation for Respondent's consideration, taking account the discussion herein.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] Respondent has also argued that Petitioner's symptoms were not limited to the vaccinated shoulder, as she reported symptoms outside of the vaccinated shoulder, including burning, pain, and tingling at the left elbow, pain in her left biceps, burning in the posterolateral aspect of the arm, and pain at the left posterior triceps. Respondent's Report at 11-12 (citing Ex. 4 at 13, 16, 21-22, 24; Ex. 5.1 at 21); *see also* ECF No. 23 at 7, n.5. Such complaints *do* appear to be just outside of the vaccinated shoulder and may not be considered just "stray notations" of pain in other areas but otherwise consistent with a SIRVA. *See,* e.g., *K.P. v. Sec'y of Health & Hum. Servs*., No. 19-65V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022) (holding that "claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body"). Indeed, this fact could ultimately preclude Petitioner from establishing a Table SIRVA claim. Her demand for damages should take this into account and, accordingly, Petitioner should not expect to receive full value of this case given these complaints outside of the affected shoulder.